atty. ganaata.com all right we call the next matter, which is Kisseno or Kisseno v. Attorney General. Mr. Goldman. Good afternoon, your honors. My name is Michael Goldman, and I represent Petitioner Salazar in this action. I will be reserving three minutes, please. Yes, that's fine. The Board of Immigration Appeals' reversal of the immigration judge's particularly serious crime determination, in this instance, should be reversed by this court for three independent reasons. First, the Board's decision is inconsistent with the applicable regulations, spelling out that the responsibility for fact-finding rests with the immigration judge and not with the Board, that the Board may not engage in de novo review of immigration judge findings of fact, and that the Board must employ a clearly erroneous standard. The second independent reason is that we submit, as a matter of law, the Board erred in relying on the narrative of facts as stated in the pre-sentence report, which we submit is not sufficiently reliable to demonstrate what the underlying facts on which the removal order should have been based. The third reason is that the Board employed an overruled legal standard in reversing the immigration judge. What the Board did was to define what is meant by, the charge was a robbery, was it? Attempted robbery in the third, correct. Attempted robbery. It just sought to define what it meant, and in so doing, it looked at several sources, but that's all it did. It wasn't, you're saying it was fact-finding. Well, the immigration judge found a number of facts. Well, that's true, but how does a Board go about defining the meaning of a statute if it doesn't consult other sources, and it ended up determining that this was an aggravated felony? Particularly serious crime, correct? Particularly serious crime, especially because physical force was used. Well, is that the finding of the Board? That is the finding of the Board. However, in doing so, in reaching what I think you're saying is a discretionary determination, the Board still has to defer first, principally, to what the immigration judge found. The immigration judge found that there was no weapon utilized, that the alien was sentenced to only a term of probation, and that the crime arose out of an act of prostitution gone bad. The case we cited to in Forteaux basically states that when a Board is going to reverse an immigration judge on a discretionary determination, they still have to defer to those findings of fact, and if they're going to reverse them, they have to tell the reader what they're doing. Even under the findings of fact, could not the Board consider that physical force was used? And that was found by the IJ. That's true, but the key point here, and I'll get into our second point, which is about the pre-sentence report, is that, it's not that it should never, a document outside the record of conviction cannot be considered. I don't think the Court needs to resolve that decision today. Because even the Board, even the Board of Immigration Appeals, which states in the particularly serious crime context, the Attorney General should be able to consider documents outside the record of conviction. Even the Board states that those documents should be, quote, otherwise reliable, unquote. And the argument I'd like to make here is that the pre-sentence report, for reasons stated by the First Circuit in Conte, and the Second Circuit in Dixon, principally the Second Circuit in Dixon, both of those circuits have held that the narrative of facts stated in pre-sentence reports do not sufficiently demonstrate the underlying facts on which to base a decision as important as removal from this country. Did you say that the immigration judge found that there was physical foreshoes? I do not think I said that. I'm sorry if I did. I didn't mean to. Well, somebody said it here today, and I think you affirmed it, because I don't find anything in the immigration judge's report that says that. Quite to the contrary. I agree with that, Your Honor. She claimed that he wanted sex, that she delivered, and he was unhappy because of this, and that later on, he trumped up this reason of where somebody else used force. Correct. Is that it? That's correct. And what you're saying, then, is that the Board of Immigration's appeal could not find that there was force, because there had been no finding. That's correct, Your Honor. Well, maybe you can clarify, then, Mr. Goldman, because I thought that this was one episode. She was inside a cab, and the cab driver claimed that he hadn't gotten paid for her services. She claims that she didn't get paid for her services, but the point is that somebody came around in a bicycle, correct my impression of the facts, and grabbed the cab driver. Those are the facts as stated in the pre-sentence report, and I would just, if I could read one from Dixon, which I think is the most important decision out there on the pre-sentence report. This is a New York ... Slowly and distinctly so we understand. Okay. The PSR is a tool used in aid of sentencing, and typically describes conduct ... Slowly and distinctly. That demonstrates the commission of an offense, even if the alien was never convicted for that activity. Because the factual narratives contained in the PSR are prepared by a probation officer on the basis of interviews with the prosecuting attorneys, police officers, and law enforcement agents, they may well be inaccurate. They may include allegations that were not proven at trial, as well as alleged facts that would have been inadmissible at trial had the prosecution attempted to present them. Such a narrative is not a highly reliable basis for a decision of such importance as deportation, and I think if you take a look at the pre-sentence report on the record here, those concerns are borne out. It is created by a New York City Department of Probation employee, formed from statements, interviews with a district attorney, who ostensibly interviewed the complainant taxi cab driver, and the police officer. So we have double and possibly triple layers of hearsay. You're arguing the PSR is not sufficiently reliable. That is correct, Your Honor. And there is some case law from the Second Circuit to support that. I think you cited it in your brief. But let's get back to a minute of the crime. What crime did your client plead guilty to? Attempted robbery in the third. And what are the elements of that offense? Attempted robbery in the third is when someone forcibly steals property from another. All right. Forcibly steals property from another. That's correct. The IJ credited your client's testimony, which said that's not what happened. So why was the BIA wrong to find that your client's testimony was in contravention of the guilty plea that she entered? Well, I don't think the immigration judge ever stated that he believed my client to be actually innocent. I think that is what the BIA is strongly implying. And I think the BIA... But your client's entire testimony, as I recall the transcript, your client's testimony, at the immigration hearing was not that she forcibly stole money from the cab driver. It's that she was the victim and the cab driver lied. That is indeed... You cannot reconcile the two, can you? The immigration judge did not state, I think that this is exactly what happened. The immigration judge made a finding that the crime was not particularly serious in his estimation because he credited her testimony. And her testimony was not... I think this case is different. If I could pose a hypothetical for you, I'd like you to respond to. Judge Fuentes talked about the bicyclist, the facts, et cetera. I think you'd have a different case here if your client testified to the IJ, yes, Your Honor, I forcibly stole from the cab driver, but it's not the way that unreliable pre-sentence report happened. Those facts are very trumped up. That's not the way it happened. Here's what I did. Maybe instead of a knife or something physical, maybe it was an elbow or something, right? But I don't see anything in the record to slice the onion that thinly. What I see are two radically different stories. I see the story in the PSR, which supports the crime to which your client pleaded guilty, and then I see her testimony before the IJ, which is tantamount to saying, I'm innocent. I think that's the key point when there are sort of two alternative theories of the facts. It's not a proper exercise of discretion. It's the board engaging in its own fact-finding, and that is improper under the applicable regulations located at ACFR Section 1003.1 and Roman IV, which state that the board may not engage in its own independent fact-finding. If the board had felt that the immigration judge neglected the pre-sentence report, the And that's at ACFR. Would the board make its own fact-finding? The board may not engage in its own fact-finding, Your Honor. No, but why can't the board conclude that forcibly stealing, i.e., it was called aggravated robbery, right? Attempted robbery in the third. I'm sorry. Yeah. Attempted robbery in the third. Why can't the board make a legal conclusion that attempted robbery in the third, which you said has an element thereof of forcibly stealing, why can't the board legally determine that that's a particularly serious crime? Particularly serious crime determinations are generally not done categorically, as I understand you are suggesting, Judge Hardiman, that it usually takes into account the elements, the facts and circumstances, and the sentencing information, or how long the person was sentenced to. Well, but that's information you just said you don't want them to consider. You can't have it both ways. You can't tell the BIA you can't consider the PSR and then turn around and say the BIA erred because it failed to consider the facts as elicited in the PSR. Well, I think the focus has to be on the board opinion and what the board did, and my argument is twofold, that it did find independent facts, and if it wanted the immigration judge to look at the pre-sentence report, there should have been a remand. That should have been the proper results, number one. And number two... What fact did the BIA find? The BIA found that the alien, my client, and an accomplice plotted, you know, this bike theft. That's the version of the fact that's stated in the pre-sentence report. Those are the facts that the BIA found, I submit. Well, if the BIA can take into account the PSR and other factors other than the statutory factors, if they can do that, why didn't the BIA also take into account the testimony of your client? I don't know why they didn't. And that's under the regs. They made findings of fact on credibility, particularly. The court encountered no problems with respondents' credibility. It was never mentioned by the BIA. The BIA never mentioned credibility, never mentioned the fact that the immigration judge credited that there was no weapon utilized. What do you want to do with this case? I think it should be remanded to the board, ask them to analyze the factual nature without the pre-sentence report. But if this court feels that more fact-finding is needed, then it must go back to the immigration judge for further fact-finding. That would be the factual nature that was presented before the IJ? Correct. That's what the IJ is for, no? Correct. But the IJ already found facts that cause you to win the case. The only problem is those facts are inconsistent with the guilty plea your client entered. The immigration judge never specifically stated that he found my client to be innocent. That is the basis of the board's decision. I find a problem with that. We have to focus on the board here. That's the task of this court. But you said that the IJ credited your client's testimony. Correct. Your client's testimony was, I didn't do it. When you add the facts to which your client testified to, that was a completely different story than the facts in the penal code. I agree. And I see my time is up, but I think when you do have two different stories, the result is the board cannot choose one of those stories. It has to defer to the immigration judge or at least state, you know, we're employing this. You're wrong. The board's decision is as sort of confusing as I think you're describing the immigration judge is. We have to focus on the board here. Did the board say that the immigration judge was clearly erroneous in the findings that it made? No, it didn't state the standard of review. It didn't state that. Is that required if they're not going to defer to the fact finding of the IJ? I think the regulations spell out that standard of review should be stated and by an appellate court. It would be no different than if we found that the findings were credible and the district court nevertheless sought to overturn them. I agree. Yeah. Thank you, Mr. Goldman. Thank you. You reserve time for rebuttal, I believe. Mr. Mencken. Thank you, Your Honor. Excuse me. Good morning. May it please the court, Jeffrey L. Mencken, United States Department of Justice for the respondent. Ms. Salazar was convicted on a guilty plea of aggravated or rather attempted robbery and was found removable because she was convicted of an aggravated felony. As the court mentioned earlier, the statute, the New York statute, requires the use or threatened immediate use of physical force upon another person. The board reversed the immigration judge's finding that the conviction was not a particularly serious crime and found Ms. Salazar ineligible for withholding. Does the board have to defer to fact findings of the immigration judge? No, Your Honor, and in this circumstance for the following reason. It's agreed by both parties that the particularly serious crime decision is inherently discretionary. No, no, no. I'm talking about the factual findings. Does the board, is the board bound by the factual findings of the immigration judge the way we are bound by factual findings of a district court judge unless we hold them to be clearly erroneous? Well, Your Honor, the board's operating regulations state that matters of discretion, law, and judgment are reviewed de novo, and this is what we cited in our brief. It's in the Code of Federal Regulations 8 CFR 1003.1 D32. This is a matter of discretion, which the board reviews the record as if it's making the decision in the first instance. That is de novo review. The question is whether or not it's a serious crime or whether or not it's an aggravated felony. Is that right? That's the discretionary judgment. I'm speaking about the fact finding, the fact that she testified, she did not use force, that it was a sexual episode in which the disappointed cab driver retaliated against her. Right, and what I believe that the board found was that the immigration judge did not apply the applicable standard for determining particularly serious crime because the immigration judge is required to look at the circumstances of the offense. Everyone agrees to that, and you have an inconsistency if, I don't know that the immigration judge found anything here. The immigration judge said, Ms. Salazar testified that she was the victim, I'm paraphrasing, but you have a plea to a statute that requires a finding of immediate use of force or the threat of immediate use of force, and the immigration judge's acceptance or citation of Ms. Salazar's testimony that I didn't do anything does not fulfill the responsibility legally of looking at all of the applicable factors. Then shouldn't it remand it? No, Your Honor, because in a matter of discretion, it's looking at the same record that the immigration judge looked at. I don't understand how it can be a matter of discretion when there is the BIA going down one track and the IJ going down the other track. The IJ has made findings of fact, the BIA takes no cognizance of them whatsoever. No cognizance whatsoever, and you're telling me then in that situation, you just ignore what the immigration judge did, although there was no finding, or there was no conclusion, that he had been clearly erroneous in what he had found. Well, what we have, Your Honor, is the discretionary determination of particularly serious crime. You have an immigration judge who cites one segment of testimony, but does not look at what was Ms. Salazar convicted of. So, what you have is an erroneous application of the law. The regulations that govern the Board's review, which are the Board's own regulations, which it's interpreting, state that this is a de novo review. The Board never went outside the record. In a de novo review, can the BIA just look at the elements of the offense and conclude from that that this is a particularly serious crime? Well, I think it did here. No, but is it proper for the BIA to do that? I believe so, Your Honor, because it's looking at the record, and the record is the statute of conviction, and the Board came right out and said that because the crime involved the intent to threaten or to use force against a person, that's what made it a particularly serious crime. I guess what strikes me as odd about this case is, if you're familiar with our jurisprudence under the Armed Career Criminal Act, we take a categorical approach. You just look at the elements of the offense, okay, and other facts that might be stipulated to. If we look at the elements of this offense, how could the BIA be wrong in saying that this is a particularly serious crime? And, you know, so you could stop. You could win the case there, but if we drill down to the PSR, those facts don't exactly go Ms. Cassano-Salazar's way either, right? Do you have anything in the PSR that you object to or that you think is problematic here? No, because even Ms. Salazar's attorney agrees in their pleadings that the Board or the immigration judge can go beyond the record of conviction. They just object to anything that doesn't help their case. Because in the immigration arena, we don't, we're not subject to that same categorical rule constraint. Yes, and what we're not dealing with- But there has to be, your able adversary is correct, is he not, that it has to be reliable? Well, I have two problems with that, your honor. One is that there was no objection below. It was never raised in immigration court. I understand that the alien was pro se, but we're not going to deal with evidentiary objections here for the first time. Secondly- The PSR went into evidence in front of the IJ. Yes, and what we're dealing with is really weight and not admissibility because the regulations in immigration court say that basically everything is admissible. And we cited the, if I misparaphrased the regulation, I apologize. You take the position, as I read it in your brief, that the BIA can look at the PSR, can look at all the circumstances. Yes. Isn't that so? Yes, your honor. And then come to the conclusion, which is sort of, I guess you'd call it a modified kind of approach to the categorical approach. It would be here because there's no per se finding of particularly serious. But the BIA never looked at the findings of fact made by the IJ or her testimony, which is part of the circumstances surrounding this. At no time did it ever defer to that. It never even mentioned it. I think it did, your honor, in that- Where did it mention it? What the board- And it did not have anything to do with the credibility of him or her, it or whatever. Well, what the board said was, respondent stands convicted of attempted robbery and the board- Now, where are you reading from? Oh, I'm sorry. I'm looking at the board's decision. I'm afraid I don't have the record site on this. I have the board's decision before me. It's roughly an inch up from the bottom, your honor. Go ahead. Last three words on the- Is that a free sentence, investigation- The sentence right above that, your honor. The respondent stands convicted of attempted robbery and the board cannot reassess guilt or innocence. What you get into when you have Ms. Salazar saying, I'm the victim here, is that you're now redetermining the guilt or innocence of the crime for which she was convicted. You don't have to go there, do you? I mean, it seems like you can stop at the definition of the crime. Supposing she pled guilty to armed robbery, you don't have to go beyond that. I don't. I would agree and I would like to stop there. Well, at some point, you have to say this is a particularly serious offense and if you have an attempted robbery with the use of force, isn't it within the BIA's province to say that's a particularly serious offense? I think so and there's precedent. Do you have to go further than that? They did not and I think that's what the board did was look at the statute and that's why in our supplemental brief, we do say that sure, the board mentions the presentence report but it doesn't to the extent that it goes beyond the statutory language. I imagine there's some close cases here and there where they have to look at the record but maybe a burglary. And I would agree that this does not present itself as a close case given what Ms. Salazar was convicted of. If you believe what she told the IJ, it's a bad case for you because she's an innocent person. That's a problem because The problem is that she's telling, when it's convenient for her, she walks into state court and says I'm guilty, I'll take the hit but then she's in immigration court and all of a sudden she can't admit that so now she's not the perpetrator, she's the victim. Precisely. Doesn't that come down to whether or not the BIA should defer or be bound to the findings of fact made by the fact finder who is the IJ? The BIA can't make facts, can it? Can't find facts. I would disagree, Your Honor, respectfully because I don't believe the board found any facts. Can't the BIA find facts? Don't we have precedents that say and don't you have a statute that says that it cannot? Your Honor, in reaching the discretionary determination, the board is required to look at the circumstances and the circumstances are the conviction. The board is not required to ignore what Ms. Salazar was convicted of because she says she didn't do it. That's what we have here. You've got a finding of fact that she didn't do it, not that she just said. There's a big difference between what a defendant says and what the finding of fact that emanates from that is. Well, respectfully, Your Honor, the finding of fact is she was convicted of attempted robbery. That's the finding of fact. Her attempt to withdraw her plea in immigration court is ineffectual. I would accept the hypothetical before that was offered, that if she said that there were mitigating circumstances, I stole the money, but the cab driver and I had a history or something to that effect, what she's saying is, I didn't do it, I just pled to get out of the courtroom. Well, that's just too bad on her part because she cannot withdraw her plea, not in immigration court. I don't want to belabor the point. We seem to have a difference of opinion as to whether or not a finding of fact made by the fact finder can be disregarded because that's what it was. There was no determination as I see it by the BIA that that finding of fact was wrong. And we seem to have a difference of opinion as to whether or not the BIA is bound by a finding of fact made by the fact finder. Well, Your Honor, I think our disagreement is not as to the concept. It is what was the fact. And the fact, the operative fact here was the conviction. She could not come in and say, yeah, I was convicted. The fact is also that she said she didn't do it, that there was a sexual experience that failed. And that there is no finding any place that she had ever engaged in physical contact. The only thing you have is a pre-sentence report, which may have emanated from one or two or three or four sources, which talks about the accomplice and the $87 that was taken from the cab driver and that sort of thing. Yes, Your Honor. And what we have is a conviction for the use or threatened use of force. If Ms. Salazar says, I didn't threaten, I didn't use, I didn't do it, I'm not even the right person, I don't know what I'm doing here, that is not binding on the board, which is looking at the legal standard of what was the board is not and neither is the IJ reassessing guilt or innocence. If she pled guilty, that's what's in the books and that is the factual finding that controls. And I think that the board did, found no facts beyond that. The board looked at the record that was before it and it reached an appropriate legal conclusion on a matter of discretion and a legal error by the immigration judge. So at that point, Your Honor, unless there are any questions by the panel, I would rely on our pleading. Thank you, Mr. Menken. Thank you, Your Honor. Mr. Goldman. Just a couple of points. Counsel is correct that the review over the particularly serious crime determination is performed de novo, but, and the reg does state that, but the other regs do not go away. They operate consistently. Therefore, as Judge Garth was stating, you still have to defer to immigration judge findings of facts. Is there a point at which the BIA can say this is a strictly legal decision that we are making? Particularly serious crime determinations, Your Honor, generally do not operate that way. But at some point, the BIA can say you have just confessed to murder and convicted of murder. I would, I would agree. At some point, the BIA can say, we don't have to look any further. If we're getting into, yeah, if we're getting into hypotheticals, I would say this is not on that level of crime as either. You looked at this case, which is an attempted robbery by physical force, could not, could not be a particularly serious offense, that you have to go back into the circumstances. The history of particularly serious crimes are, well, first of all, this court has stated in a LACA that to be a particularly serious crime, it has to start with an aggravated felony. To get asylum, you have, you're not allowed to get asylum if you have committed an aggravated felony. You can still get withholding though. You can't get withholding if you've committed a particularly serious crime. So logically, the particularly serious crime is supposed to be the worst of the worst. I don't think this qualifies. If I could just move to a second point while I still have some time, though. Can you answer something? Sure. Is Mr. Quasino been deported? Yes, that's, that's, that's true. When was he deported and wasn't there a stay in effect at the time that he was deported? We filed an emergency stay for removal and while this court was adjudicating that petition, he was, she was deported by DHS. When was this? December 10th, 2007. When? December 10th, 2007. So he's been deported for over a year, almost a year. That's correct. Well, and nothing was done about the stay? Was the stay granted? You'd have to ask DHS. I tried. Was the stay granted? The stay was granted. Well, I'd like to hear from the government about that. Was the stay granted after removal? After removal had taken effect. And has the government done anything about it? Did they retrieve him? Did they bring him back? They decided against doing so, I think principally because of my client's long criminal record of misdemeanor crimes. Maybe Mr. Lincoln can address it. Yes, Your Honor. No, wait. No, not now. Let Mr. Alderson. Yeah, I'm sorry. I didn't mean to get you off track on that. No, that's okay. I just wanted to bring up one other point regarding the reliability of the pre-sentence report. And this circuit hasn't had an opportunity to discuss the reliability of the PSR like the first and the second has. But just two cases. This summer in Nijijiwan, which is 523 F3-387, the Third Circuit cited to Conte favorably, not just generally, but specifically addressed the fact that the Conte court had credited statements of fact that were located in a criminal complaint, but not in a PSR. Did anyone argue to the IJ that the PSR was unreliable in this case? In this case? Yes. The exhaustion argument. The alien was pro se before the immigration judge. My question is, let me ask it in two parts. Was the PSR entered into evidence before the IJ? Correct. Did anyone object to its entry? No. Did anyone challenge and say this is a lie? This document that was put into evidence is a lie, that's not the truth? No, the alien was pro se before the immigration judge, so I ask that the court take that into consideration. Well, but you're asking us to make a finding that the PSR is unreliable and you're making that argument for the first time before this court. That argument was made neither to the IJ nor the BIA? The answer I would have to that is the requirement under 8 U.S.C. section 1252D that states that this court can only hear final orders of removal when an alien has exhausted his or her administrative She was victorious before the trial judge. That would preclude many cases where an alien, let's say pro se, actually won before an immigration judge. That decision was then reversed by the board, and then the alien has to go to the Third Circuit, let's say. The alien would then be precluded from raising any issue that arose before an immigration judge. And we attached one decision which we found, SUBA, S-U-B-A-H, which explicitly so holds and rejected the similar argument that the government is making here. And that's the only case we could find because I think 1252 doesn't really come into play when the alien has won at the trial level. Your time is up. Sure. I want to know something. If Mr. Queseno has been deported back to, we're at Columbia, right? Correct. There are allegations or statements made in this entire proceeding that individuals such as Mr. Queseno are subject to torture. I assume you've been in touch with your client. I have not been able to. You've not been able to. So you don't know whether he's been tortured or not. No. And you don't know whether if we, perchance, were to reverse what the BIA did, whether you could even recover him. Well, there are not, there's probably not any cases that actually discuss that point. But this case is not moot. Decisions go on. It may not be moot. Okay. What I'm asking you is, could he be brought back? You don't even know where he is. The potential for that exists. You don't know whether she's alive. I've done my darndest to try and get in touch with my client. It's very difficult working in the United States bureaucracy. Try the Colombian bureaucracy. And you know, there's no forwarding address given. They're basically taken in the night and sent to Columbia. That's exactly what happened here. Well, I quite agree with you. It may not be moot, but what we're talking about is somebody you can't get back, you haven't been in touch with, you don't know whether they've been tortured, you don't know whether there have been any adverse consequences to his deportation, and that he shouldn't have been deported in the first place. All those may be true. I don't know if those are necessarily germane considerations to the issues before the Court today. Are you a pro se counsel? Correct. Pro bono. Pro bono? Correct. Pro bono. I don't have any credit. Thank you, Mr. Goldman. Thank you. Mr. Rameca, just to get you back to see if you shed some light on what has happened. Yes. I want to know about this. Yes, Your Honor. This is not the first time, you know, that we have had, just recently, we had another case, Catwell, in which we entered an order saying the deportation in which Mr. Catwell was then summarily deported. Your Honor, by way of explanation, certainly not excuse, I came on the case after all of this occurred, but I looked into it. There is a status report on file with the Court dated January 23rd of this year that sets forth what occurred. The stay motion, apparently, was filed in November. Ms. Salazar was removed in December, and the stay order was granted in January, and that's all set forth by my predecessor. I have checked with- Can you give me that again? You say that the application for a stay was filed in November. Mid-November. The individual was removed mid-December before there was a ruling on the stay motion. The stay was granted in January. Is it your agency's position that when a stay motion is granted or is filed, and no response has been made by the government, that they can go ahead, despite that, and deport the individual? Again, Your Honor, what occurred is set forth in the status report as to what happened with I'm not checking to see the status of the stay motion. I'm recreating this from now. What I'm concerned about is this, and I realize that it's collateral, perhaps, to what you're arguing before us, but I'm terribly concerned about it, because if you're right and that the mere filing of a motion for a stay does not have any impact at all upon the government, and the government, the moment it gets a motion for a stay, says, let's get this scoundrel out of here before an order comes down granting the stay, it's a very disquieting procedure. Your Honor, I can represent that my office, the Department of Justice, Office of Immigration Litigation's practice is to not take any action. Of course, we aren't the people who remove anyone, but is to notify, is to not act on a removal order while a stay is pending for obvious reasons. The status report sets out that for reasons that I certainly cannot explain, that procedure broke down because the Department of Homeland Security didn't check. So if we certainly had known that this was what they were proposing, I doubt very much that it would have happened. And of course, I extend my personal regrets, and my predecessor does so in writing. I'm very dismayed about this. This is not only a case of a motion, it's a case of an order that I'm going to do. And we can't do anything about it, except we have just issued an order to show who I serve. And I think we need to get a response on this thing to make it right. In the other case... Mr. Megan, you should get to, or something in writing, a response from the officials who are responsible for determining whether somebody should be returned to a country or not, and who monitors the stay motions. Send forth the policy, of course, because it's not the first time it's happened. And it's happened in a case that I had, where a motion or stay was filed. Next thing we know, the petitioner, the alien is returned to a country. So somebody is not monitoring the stay motions when they're filed. Seems to me that the filing of a motion should alert the government that there is a matter pending in court, and that the alien involved in that case should not be removed without further order from the court. And as I said, Your Honor, it's certainly the intent and practice of the Department of Justice. However, since the responsibilities were broken out to different agencies, that for some reason a year ago was ineffective. And I do have a copy of the status report that does set out what happened, if I can... Well, I'm going to ask you to tell us in writing, formally, what the intent and practice of your department is, what particularly happened in this case. Number two, number three, how this is to be avoided in the future. I'd like you to send a copy of that to the panel, but also to the clerk of the court. Yes, Your Honor. The clerk of the court. Ten days. Ten days. Very good, Your Honor. Thank you, Mr. Mencken. Thank you. Mr. Goldman, you're proceeding pro bono. You have our thanks for taking on this case. Very well presented. Thank you, Mr. Mencken. Thank you, Your Honor.